UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CROSS AUTOMOTIVE, INC D/B/A MEINEKE CAR CARE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNAL REVENUE SERVICE; THE UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.   2:24-cv-181<br><br>**Plaintiff's Original Complaint** |

Plaintiff Cross Automotive, Inc. files this lawsuit seeking a federal tax refund of $92,309.70 for its Employee Retention Credit for the third quarter of 2021. Plaintiff is entitled to the refund under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L No. 116-136 §2301, 134 Stat. 281 (2020) ("CARES Act") and section 3134 of the Internal Revenue Code (I.R.C.) because the Plaintiff qualifies for the statutory test for a decline in gross receipts in quarter three of 2021. *Id.* at § 2301(c)(2); I.R.C. § 3134(c)(2)(A)(ii)(II).

Plaintiff demands a jury trial on all issues triable to a jury.

## NATURE OF THE CASE

1.   In March 2020, President Donald J. Trump signed into law the CARES Act to aid businesses and individuals in response to the unprecedented public health crisis caused by the COVID-19 pandemic. The CARES Act created the Employee Retention Credit ("ERC") for employers who continued to pay qualified wages to their employees during the height of the pandemic in 2020 and 2021.[1] The statute created a refundable and non-refundable tax credit

---

[1] *See* Guidance under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), as amended by § 206 and § 207 of the Taxpayer Certainty and Disaster Tax Relief Act

against applicable employment taxes for each calendar quarter in which a business was eligible. *See* I.R.C. § 3134(a).

2. According to the U.S. Department of the Treasury, the department to which the IRS belongs, the CARES Act and the Coronavirus Response and Consolidated Appropriations Act of 2021 "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2]

3. Plaintiff, Cross Automotive, Inc., qualified for, and applied for, a refund under the ERC program with the United States Internal Revenue Service ("IRS"). After a lengthy delay, the IRS has failed to process Cross Automotive, Inc.'s claim for an ERC refund. On September 14, 2023, the IRS issued a moratorium on processing ERC claims, effectively disallowing timely submitted ERC claims without review."[3]

4. Cross Automotive Inc. brings this lawsuit to obtain the credit it is entitled to receive under the CARES Act.

## JURIDISCTION & VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1346, and under 26 U.S.C. (I.R.C.) § 7422.

---

(hereinafter the "Relief Act"), enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 3038 (2020) (hereinafter, "Consolidated Appropriations Act"), and American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 8 (2021) (hereinafter, "American Rescue Plan Act") (providing extensions through January 1, 2022).

[2] U.S. Dep't of the Treasury, *About the CARES Act and the Consol. Appropriations Act*, (last visited Aug. 19, 2024), https://home.treasury.gov/policy-issues/coronavirus/about-the-cares act#:~:text=U.S.%20Department%20of%20the%20Treasury,-Search&text=The%20Coronavirus%20Aid%2C%20Relief%2C%20and,%2C%20small%20businesses%2C%20and%20industries.

[3] IR-2023-169, (Sept. 14, 2023).

6. Venue is proper under 28 U.S.C. § 1391(e)(1) and §1402 because Plaintiff maintains its principal place of business and/or principal office in this district in Amarillo, Texas, and a substantial part of the events giving rise to this action occurred in this district.

## THE PARTIES

### A. Plaintiff

7. Plaintiff, Cross Automotive Inc., is a corporation organized in Texas with its principal place of business in Amarillo, Texas.

8. Cross Automotive, Inc. filed its Articles of Incorporation with the Texas Secretary of State on December 8, 1997.

9. Roger Cross and Cynthia Cross own Cross Automotive, Inc., which was doing business as Meineke Discount Mufflers in 2020 and 2021. The business is family-owned.

10. Throughout 2020 and 2021, Cross Automotive, Inc. performed automotive repair including, but not limited to diagnostics, engine, transmission, differential, air conditioning, heating, exhaust, front end, suspension, ride control, alignment, state inspection and oil change.

### B. Defendants

11. The United States of America is a defendant.

12. The IRS is a bureau within the Executive Branch of the United States government organized within the Department of Treasury tasked with assessing and collecting internal revenue in the United States. The IRS is an "agency" within the meaning of 5 U.S.C. § 701(b)(1).

## BACKGROUND

### A. Congress drafts the CARES Act in response to the COVID-19 pandemic

13. In the beginning of 2020, COVID-19 swept through the United States and the federal, state, and local governments issued orders to stem the spread of the disease. Those

orders had an expected side effect—they exacerbated the already substantial disruptions to the economy from the pandemic.[4]

14. In March 2020, President Donald J. Trump signed into law the CARES Act as an economic bill to mitigate the economic fallout from widespread business impairments and job losses.

15. The ERC program was a significant part of the CARES Act. The ERC program created a tax credit for employers who continued to pay qualified wages, including some health plan expenses, to their employees. *See* I.R.C. § 3134(c)(3); FS-2020-05 (May 2020); *See also,* U.S. Dep't of the Treasury, *Emp. Retention Tax Credit: What You Need to Know,* (last visited Aug. 19, 2024), https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.

16. By offering a refundable tax credit, the ERC program aimed to reduce the financial burden on employers. By helping businesses maintain their employees, the ERC program intended to create significant benefits for the country, including lowering enrollments in public assistance programs—like Unemployment Insurance and Medicaid—by people who might lose their jobs.

17. President Donald J. Trump and Congress wanted the IRS to widely broadcast the ERC program to American businesses, so they could claim its benefits. The IRS was instructed to conduct a public information campaign about the ERC program to encourage businesses to participate. The CARES Act was amended to require the IRS to work with the Small Business Administration (SBA) to disseminate information about the tax credit.[5]

---

[4] Exec. Ord. No. 14002, 86 Fed. Reg. 7229 (Jan. 22, 2021).
[5] *See* Consol. Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (requiring government "outreach" to business by giving "notice about the credit allowed under this section and the requirements for eligibility to claim the claim"); *see also* U.S. Dep't of the Treasury, *Treasury*

B. **The Employee Retention Credit**

18. The original CARES Act, signed into law in March 2020, provided a tax credit equal to 50% of qualified wages paid to employees, up to a maximum of $10,000 per employee of qualified wages for the year 2020.

19. In late 2020, President Donald J. Trump signed into law an amendment of the CARES ACT that raised the ERC and extended its duration. The amendment allowed eligible employers to claim 70% on the qualified wages paid with a cap of $10,000 per employee of qualified wages for each calendar quarter.[6] This increased credit was extended to the first and second quarters of 2021, and eventually through the third quarter of 2021.[7]

20. In sum, an eligible employer may claim a credit for 2020 up to $5,000 per employee for the year, and, for 2021, the employer could claim a credit up to $7,000 per employee per quarter.

21. Unless otherwise excepted, qualified wages are wages and compensation (subject to Social Security and Medicare taxes) paid by an eligible employer to eligible employees and include the eligible employer's qualified health plan expenses that were properly allocable to such wages.

---

*Encourages Bus. Impacted by COVID-19 to Use Emp. Retention Credit* (Mar. 31, 2020), https://home.treasury.gov/news/press-releases/sm962.

[6] *See* The Relief Act, enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub.L. No. 116-260, 134 Stat. 1182 (2020); *see also* I.R.C. 3134(b)(1)(A-B); *see also* I.R.C. 3134 (b)(2) (citing §3134(a), with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132)).

[7] The Relief Act § 207 enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (modifying the cap to 70%); The American Rescue Plan Act Pub. L. No. 117-2, 135 Stat. 177 § 3134 (2021) (providing further relief of 70% of a cap of $10,000 for the third and fourth quarters of 2021); Infrastructure Inv. & Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (disallowing the ERC credit for the fourth quarter businesses unless they qualified as a start-up business).

22. The ERC was terminated for most employers in the fourth quarter of 2021 by the Infrastructure Investment and Jobs Act ("Infrastructure Act"). *See* IR-2021-242 (Dec. 6, 2021). Under the Infrastructure Act, only a recovery startup business may claim the ERC in the fourth quarter of 2021. *Id.*

    C.    **Qualifications to Claim the ERC**

23. The ERC was available to businesses of many sizes, but an eligible business generally had to meet one of two criteria for a given quarter in 2020 or 2021: (1) a statutorily defined decline in the business's gross receipts when comparing an applicable quarter in 2020 or 2021 with the same quarter in 2019, or (2) the business was fully or partially suspended due to a governmental order during an applicable quarter in 2020 or 2021.

    a.    <u>Decline in Gross Receipts In 2020 and 2021</u>

24. A business qualifies as an "eligible employer" if it suffered a statutorily required reduction in gross receipts in 2020 and 2021, as compared to 2019. *See* I.R.C. § 3134(c)(2)(A)(ii)(II).

25. A qualifying quarter for 2020 is a quarter where the business's gross receipts were 50% less than the same quarter in 2019. *See* CARES Act § 2301(c)(2)(B). Plaintiff does not seek a claim for a statutory gross-receipts-declined for 2020.

26. A qualifying quarter for 2021 is a quarter when the business's gross receipts were 20% less than the same quarter in 2019. *See* I.R.C. § 3134(c)(2)(A). For 2021, employers may elect into ERC qualification for a quarter by demonstrating a gross receipts reduction of more than 20% in the immediately preceding quarter. *See* I.R.C. § 3134(c)(2)(A) & (B); *see also* IRS Notice 2021-49; IRS Notice 2021; IRS Student Guide for COVID Credits & Deferrals for Employment Tax 3-45.

b. <u>Full or Partial Suspension Due to Governmental Orders</u>

27. A business *also* qualifies as an "eligible employer" if it "is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease of 2019 (COVID-19)." CARES Act § 2301(c)(2)(A)(i); I.R.C. § 3134(c)(2)(A)(ii)(I).

**D. The IRS's Refusal to Apply the CARES Act and Its Moratorium**

28. The IRS has decided not to follow the plain text of the CARES Act.

29. In September 2023, the IRS unilaterally announced it was suspending its review and processing of new ERC claims. *See* IR-2023-169 (Sept. 14, 2023). "During the ERC review period, the IRS continued to process claims received prior to September 2023. The agency processed 28,000 claims worth $2.2 billion and disallowed more than 14,000 claims worth more than $1 billion." *See* IR-2024-169 (June 20, 2024). The IRS originally suggested its moratorium would end, and processing would resume, at the beginning of 2024. The IRS did not end the moratorium in 2024. The IRS partially lifted the moratorium for cases filed before January 31, 2024, yet the IRS continues to refuse to adhere to the statute passed.

30. The IRS has claimed that it continues to process claims filed before the moratorium began on September 14, 2023, but it has done so "at a greatly reduced speed." IR-2023-169 (June 20, 2024). In practice, the IRS has processed very few ERC claims since the moratorium began. The IRS has intentionally stalled the ERC program to such an extent that it has effectively suspended the program altogether.

31. On June 20, 2024, the IRS issued a news release announcing plans to deny tens of thousands of allegedly improper, high-risk employee retention credit claims while beginning to process low-risk claims. *See* IR-2024-169 (June 20, 2024).

### E.   Plaintiff Cross Automotive Inc. qualifies for the ERC under the CARES Act

32.   Plaintiff qualifies for the ERC under the CARES Act because Plaintiff suffered a substantial decline (-38%) in gross receipts for the Q3 of 2021, compared with Q3 of 2019.

33.   In 2019, Cross Automotive, Inc. employed sixteen full-time employees, allowing it to qualify as an eligible business for the ERC in both 2020 and 2021.

34.   Cross Automotive's gross receipts for the third quarter (Q3) of 2021 were $543,938.81 as compared to $225,829.65 for Q3 of 2019 showing a 38% decline in gross receipts. Under both the CARES Act and the IRS's guidelines, Q3 of 2021 is a qualifying quarter for Cross Automotive because the gross receipts for Q3 of 2021 were less than 80% of the gross receipts for Q3 of 2019.

## COUNT 1: CLAIM FOR RELIEF
## REFUND FOR GROSS-RECEIPTS-DECLINED

35.   Plaintiffs incorporate by reference the allegations in Paragraphs 1 to 34 as if fully set forth herein.

36.   Plaintiff is entitled to a tax refund for ERCs for Q3 of 2021 under the gross-receipts-declined test of the CARES Act.

37.   Plaintiff, Cross Automotive, is an eligible employer under the CARES Act criteria for Q3 of 2021. Plaintiff satisfies the criteria for the gross-receipts-declined test for the Q3 2021 as shown below:

GROSS RECEIPTS:

| QUARTER TOTAL | 2019 | 2021 | PERCENTAGE |
|---|---|---|---|
| Q3 | $543,938.81 | $335,829.65 | -38% |

38.   Plaintiff paid qualifying wages to sixteen employees during the third quarter of 2021.

39. None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness. Plaintiff excluded from the eligible wages the qualified wages included in the payroll costs reported on the PPP Loan Forgiveness Application.

40. Plaintiff made a timely and proper claim for the ERC with the IRS. On May 5, 2023, Plaintiff filed a 941X for Q3 of 2021 and claimed an ERC in the amount of $92,309.70 for that quarter.

41. The IRS has failed to process the Plaintiff's valid ERC claim, and, as a result, has not provided the statutorily required refund to Plaintiff.

42. Under I.R.C. § 6611, the United States owes interest on the refund due to Plaintiff "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Plaintiff overpaid its taxes for at least 2021 and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Plaintiff.

43. Pursuant to I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. Under I.R.C. § 6532, no suit pursuant to I.R.C. § 7422 shall begin prior to the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.

## COUNT II: ATTORNEYS' FEES AND COSTS

44. Plaintiffs incorporate and reallege paragraphs 1 through 43 above.

45. Under I.R.C. § 7430(c)(4)(B), the United States must pay litigation and administrative costs because its position is not "substantially justified." The IRS created a self-

imposed moratorium on processing ERC claims, and, as a result, has refused to process straightforward claims like those belonging to Plaintiff.

PRAYER FOR RELIEF

46. Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief:

47. A tax refund in the amount of $92,309.70 for the Employee Retention Credit for the following taxable periods: the third quarter in 2021.

48. Award reasonable attorneys' fees and costs, as allowed by law;

49. Award pre-judgment and post-judgment interest, as allowed by law; and

50. Award such further relief as the Court may deem just and proper.

Dated: August 22, 2024

                                              */s/ Justin A. Nelson*
                                              Justin A. Nelson
Weston O'Black (*pro hac vice forthcoming*)
Daniel Wilson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
jnelson@susmangodfrey.com
woblack@susmangodfrey.com
dwilson@susmangodfrey.com

Matt Hartley (*pro hac vice forthcoming*)
Hartley Law PLLC
200 East Van Buren, Suite 300
Phoenix AZ 85004
Tel: 602.769.0999
matt.hartley@hartleylawusa.com

>Frederic M. Wolfram
>THE WOLFRAM LAW FIRM, P.C.
>Chase Tower
>600 S. Tyler St, Suite 1406
>Amarillo, Texas 79101-2361
>806-372-3449
>eric@wolframlaw.com
>
>***Attorneys for Plaintiff Cross Automotive Inc.***

## CERTIFICATE OF SERVICE

I hereby certify this 22nd day of August 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

*/s/ Justin A. Nelson*
Justin A. Nelson