IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CROSS AUTOMATIVE, INC. <br> D/B/A MEINEKE CAR CARE <br> CENTER, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES OF AMERICA; <br><br> *Defendant,* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case Number: 2:24-cv-00181-Z |

**ANSWER**

Defendant United States of America responds as follows to the allegations contained in Plaintiff's Second Amended Complaint (ECF No. 19) ("Complaint") using the same headings as the Complaint but without admitting any allegations contained in any heading.

**I. ADMISSIONS & DENIALS**

**Nature of the Case**

1. *In March 2020, President Donald J. Trump signed into law the CARES Act to aid businesses and individuals in response to the unprecedented public health crisis caused by the COVID-19 pandemic. The CARES Act created the Employee Retention Credit ("ERC") for employers who continued to pay qualified wages to their employees during the height of the pandemic in 2020 and 2021.[1] The statute created a tax credit against applicable employment taxes for each calendar quarter in which a business was eligible. See I.R.C. § 3134(a).*

---

[1] *See* the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), as amended by § 206 and § 207 of the Taxpayer Certainty and Disaster Tax Relief Act (hereinafter the "Relief Act"), enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 3038 (2020) (hereinafter, "Consolidated Appropriations Act"), and American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 8 (2021) (hereinafter, "American Rescue Plan Act") (providing extensions through January 1, 2022).

**Answer**: Paragraph 1, including footnote 1, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

  2. *According to the United States Department of the Treasury, the department to which the Internal Revenue Service ("IRS") belongs, the CARES Act and the Coronavirus Response and Consolidated Appropriations Act of 2021 "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2]*

**Answer**: Paragraph 2, including footnote 2, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

  3. *Plaintiff, Cross Automotive, Inc., qualified for, and applied for, a refund under the ERC program with the IRS. After a lengthy delay, the IRS has failed to process Cross Automotive, Inc.'s claim for an ERC refund. On September 14, 2023, the IRS issued a moratorium on processing ERC claims, effectively disallowing timely submitted ERC claims without review.[3]*

**Answer**: The United States admits that the IRS has not processed Plaintiff's claim for an ERC refund and that it issued the statement cite in footnote 3 but denies the rest of the allegations in Paragraph 3.

  4. *Cross Automotive, Inc. brings this lawsuit to obtain the credit it is entitled to receive under the CARES Act.*

**Answer**: The United States admits that Plaintiff has brought this lawsuit but lacks the sufficient knowledge to admit or deny the rest of the allegations in Paragraph 4.

---

[2] U.S. Dep't of the Treasury, About the CARES Act and the Consol. Appropriations Act, (last visited Aug. 19, 2024), https://home.treasury.gov/policy-issues/coronavirus/about-the-cares act#:~:text=U.S.%20Department%20of%20the%20Treasury,Search&text=The%20Coronavirus%2 0Aid%2C%20Relief%2C%20and,%2C%20small%20businesses%2 C%20and%20industries.
[3] IR-2023-169, (Sept. 14, 2023).

5.  *The Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1346, and under 26 U.S.C. (I.R.C.) § 7422.*

**Answer**: The United States admits the allegations in Paragraph 5.

6.  *Venue is proper under 28 U.S.C. § 1391(e)(1) and § 1402 because Plaintiff maintains its principal place of business and/or principal office in this district in Amarillo, Texas, and a substantial part of the events giving rise to this action occurred in this district.*

**Answer**: The United States admits that Plaintiff has a principal office in Amarillo, Texas, but the United States lacks sufficient knowledge or information to form a belief about the rest of allegations in Paragraph 6.

**The Parties**

**A.    Plaintiff**

7.  *Plaintiff, Cross Automotive, Inc., is a corporation organized in Texas with its principal place of business in Amarillo, Texas.*

**Answer**: The United States admits the allegations in Paragraph 7.

8.  *Cross Automotive, Inc. filed its Articles of Incorporation with the Texas Secretary of State on December 18, 1997.*

**Answer**: The United States admits the allegations in Paragraph 8.

9.  *Roger Cross and Cynthia Cross own Cross Automotive, Inc., which was doing business as Meineke Car Care Center in 2020 and 2021. The business is family-owned.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 9.

10.  *Throughout 2020 and 2021, Cross Automotive, Inc. performed automotive repair including, but not limited to diagnostics, engine, transmission, differential, air conditioning, heating, exhaust, front end, suspension, ride control, alignment, state inspection and oil change.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 10.

**B.  Defendant**

11.  *The United States of America is the Defendant.*

**Answer**: The United States admits the allegations of Paragraph 11.

**Background**

**A.  Congress drafts the CARES Act in response to the COVID-19 pandemic**

12.  *In the beginning of 2020, COVID-19 swept through the United States and the federal, state, and local governments issued orders to stem the spread of the disease. Those orders had an expected side effect—they exacerbated the already substantial disruptions to the economy from the pandemic.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 12.

13.  *In March 2020, President Donald J. Trump signed into law the CARES Act as an economic bill to mitigate the economic fallout from widespread business impairments and job losses.*

**Answer**: The United States admits that President Trump signed the CARES Act in March 2020, but it lacks sufficient knowledge or information to form a belief about the truth of the rest of the allegations of Paragraph 12.

14.  *The ERC program was a significant part of the CARES Act. The ERC program created a tax credit for employers who continued to pay qualified wages, including some health plan expenses, to their employees. See I.R.C. § 3134(c)(3); FS-2020-05 (May 2020); see also U.S. Dep't of the Treasury, Emp. Retention Tax Credit: What You Need to Know, (last visited Aug. 19, 2024), https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.*

**Answer**: Paragraph 14 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

    15.    *The ERC program aimed to reduce the financial burden on employers by providing a tax credit. By helping businesses maintain their employees, the ERC program intended to create significant benefits for the country, including lowering enrollments in public assistance programs—like Unemployment Insurance and Medicaid—by people who might lose their jobs.*

**Answer**: Paragraph 15 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

    16.    *President Donald J. Trump and Congress wanted the IRS to widely broadcast the ERC program to American businesses, so they could claim its benefits. The IRS was instructed to conduct a public information campaign about the ERC program to encourage businesses to participate. The CARES Act was amended to require the IRS to work with the Small Business Administration (SBA) to disseminate information about the tax credit.*[4]

**Answer**: Paragraph 16, including footnote 4, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law. The United States lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 16.

---

[4] *See* Consol. Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (requiring government "outreach" to business by giving "notice about the credit allowed under this section and the requirements for eligibility to claim the claim"); *see also* U.S. Dep't of the Treasury, *Treasury Encourages Bus. Impacted by COVID-19 to Use Emp. Retention Credit* (Mar. 31, 2020), https://home.treasury.gov/news/press-releases/sm962.

### B.    The Employee Retention Credit

17.    *The original CARES Act, signed into law in March 2020, provided a tax credit equal to 50% of qualified wages paid to employees, up to a maximum of $10,000 per employee of qualified wages for the year 2020.*

**Answer**: Paragraph 17 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

18.    *In late 2020, President Donald J. Trump signed into law an amendment of the CARES Act that raised the ERC and extended its duration. The amendment allowed eligible employers to claim 70% of the qualified wages paid with a cap of $10,000 per employee of qualified wages for each calendar quarter.[5] This increased credit was extended to the first and second quarters of 2021, and eventually through the third quarter of 2021.[6]*

**Answer**: Paragraph 18, including footnotes 5 and 6, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

19.    *In sum, an eligible employer could claim a 2020 credit up to $5,000 per employee for the year, and, for 2021, the employer could claim a credit up to $7,000 per employee per quarter.*

---

[5] *See* The Relief Act, enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub.L. No. 116-260, 134 Stat. 1182 (2020); *see also* I.R.C. 3134(b)(1)(A-B); *see also* I.R.C. 3134 (b)(2) (citing § 3134(a), with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132)).

[6] The Relief Act § 207 enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (modifying the cap to 70%); The American Rescue Plan Act Pub. L. No. 117-2, 135 Stat. 177 § 3134 (2021) (providing further relief of 70% of a cap of $10,000 for the third and fourth quarters of 2021); Infrastructure Inv. & Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (disallowing the ERC credit for the fourth quarter businesses unless they qualified as a start-up business).

**Answer**: Paragraph 19 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

20. *Unless otherwise excepted, qualified wages are wages and compensation (subject to Social Security and Medicare taxes) paid by an eligible employer to eligible employees and include the eligible employer's qualified health plan expenses that were properly allocable to such wages.*

**Answer**: Paragraph 20 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

21. *The ERC was terminated for most employers in the fourth quarter of 2021 by the Infrastructure Investment and Jobs Act ("Infrastructure Act"). See IR-2021-242 (Dec. 6, 2021). Under the Infrastructure Act, only a recovery startup business may claim the ERC in the fourth quarter of 2021. Id.*

**Answer**: Paragraph 21 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

C.   **Qualifications to Claim the ERC**

22. *The ERC was available to businesses of many sizes, but an eligible business generally had to meet one of two criteria for a given quarter in 2020 or 2021: (1) a statutorily defined decline in the business's gross receipts when comparing an applicable quarter in 2020 or 2021 with the same quarter in 2019, or (2) the business was fully or partially suspended due to a governmental order during an applicable quarter in 2020 or 2021.*

**Answer**: Paragraph 22 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

  a. *Decline in Gross Receipts in 2020 and 2021*

  23. *A business qualifies as an "eligible employer" if it suffered a statutorily required reduction in gross receipts in 2020 and 2021, as compared to 2019. See I.R.C. § 3134(c)(2)(A)(ii)(II).*

**Answer**: Paragraph 23 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

  24. *A qualifying quarter for 2020 is a quarter where the business's gross receipts were 50% less than the same quarter in 2019. See CARES Act § 2301(c)(2)(B). Plaintiff does not seek a claim for a statutory gross-receipts-declined for 2020.*

**Answer**: The first sentence of paragraph 24 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law. The United States admits the remaining allegations in Paragraph 24.

  25. *A qualifying quarter for 2021 is a quarter when the business's gross receipts were 20% less than the same quarter in 2019. See I.R.C. § 3134(c)(2)(A). For 2021, employers may elect into ERC qualification for a quarter by demonstrating a gross receipts reduction of more than 20% in the immediately preceding quarter. See I.R.C. § 3134(c)(2)(A) & (B); see also IRS Notice 2021-49; IRS Notice 2021-49.*

**Answer**: Paragraph 25 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

  b. *Full or Partial Suspension Due to Governmental Orders*

  26. *A business also qualifies as an "eligible employer" if it "is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease of 2019 (COVID-19)." CARES Act § 2301(c)(2)(A)(i); I.R.C. § 3134(c)(2)(A)(ii)(I).*

**Answer**: Paragraph 26 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

**D.     The IRS' Refusal to Apply the CARES Act and Its Moratorium**

27.    *The IRS has decided not to follow the plain text of the CARES Act.*

**Answer**: The United States denies the allegations of Paragraph 27.

28.    *In September 2023, the IRS unilaterally announced it was suspending its review and processing of new ERC claims. See IR-2023-169 (Sept. 14, 2023). "During the ERC review period, the IRS continued to process claims received prior to September 2023. The agency processed 28,000 claims worth $2.2 billion and disallowed more than 14,000 claims worth more than $1 billion." See IR-2024-169 (June 20, 2024). The IRS originally suggested its moratorium would end, and processing would resume, at the beginning of 2024. The IRS did not end the moratorium in 2024. The IRS partially lifted the moratorium for cases filed before January 31, 2024, yet the IRS continues to refuse to adhere to the statute.*

**Answer**: The United States admits that on September 14, 2023, the IRS announced an immediate moratorium on processing new ERC claims to protect honest small business owners from scams. The United States admits that on June 20, 2024, the IRS made an announcement that includes the quote in the second and third sentences of Paragraph 28. The United States admits that on August 8, 2024, the IRS announced that agency would "start judiciously processing claims filed between September 14, 2023, and January 31, 2024." The United States denies that the "IRS continues to refuse to adhere to the statute passed." The United States lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations of Paragraph 28.

29.    *The IRS has claimed that it continues to process claims filed before the moratorium began on September 14, 2023, but it has done so "at a greatly reduced speed" IR-2023-169 (June 20, 2024). In practice, the IRS has processed very few ERC*

9

*claims since the moratorium began. The IRS has intentionally stalled the ERC program to such an extent that it has effectively suspended the program altogether.*

**Answer**: The United States admits that the IRS continues to process ERC claims but denies the rest of the allegations of Paragraph 29.

30. *On June 20, 2024, the IRS issued a news release announcing plans to deny tens of thousands of allegedly improper, high-risk Employee Retention Credit claims while beginning to process low-risk claims. See IR-2024-169 (June 20, 2024).*

**Answer**: The United States admits the allegations in Paragraph 30.

E.  **Plaintiff Cross Automotive, Inc. qualifies for the ERC under the gross receipts test of the CARES Act**

31. *Plaintiff qualifies for the ERC under the CARES Act because Plaintiff suffered a substantial decline (-38%) in gross receipts for the third quarter (Q3) of 2021, compared with Q3 of 2019.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 31.

32. *In 2019, Cross Automotive, Inc. employed sixteen full-time employees, allowing it to qualify as an eligible business for the ERC in both 2020 and 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 32.

33. *Cross Automotive, Inc.'s gross receipts for Q3 of 2021 were $335,829.65 as compared to $543,938.81 for Q3 of 2019 showing a roughly 38% decline in gross receipts. Under both the CARES Act and the IRS's guidelines, Q3 of 2021 is a qualifying quarter for Cross Automotive, Inc. because the gross receipts for Q3 of 2021 were less than 80% of the gross receipts for Q3 of 2019.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 33.

**Count I: Claim for Refund for Gross-Receipts-Declined**

34. *Plaintiff, Cross Automotive, Inc., incorporates by reference the allegations in Paragraphs 1 to 33 as if fully set forth herein.*

**Answer**: The United States admits that Plaintiff incorporates by reference the allegations but denies the substance Paragraphs 1 to 33 as alleged in Paragraph 34. The United States also incorporates by reference its Answers to Paragraphs 1 to 33.

35.     *Plaintiff is entitled to an ERC tax refund for Q3 of 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 35.

36.     *Plaintiff is an eligible employer under the CARES Act criteria for Q3 of 2021. Plaintiff satisfies the criteria for the gross-receipts-declined test for the Q3 2021 as shown below:*

**GROSS RECEIPTS:**

| QUARTER | 2019 | 2021 | PERCENTAGE |
|---|---|---|---|
| Q3 | $543,938.81 | $335,829.65 | -38% |

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 36.

37.     *Plaintiff paid qualifying wages to sixteen employees during the third quarter of 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 37.

38.     *None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness. Plaintiff excluded from the eligible wages the qualified wages included in the payroll costs reported on any PPP Loan Forgiveness Application.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 38.

39. *Plaintiff made a timely and proper claim for the ERC with the IRS. On May 20, 2023, Plaintiff filed a 941X for Q3 of 2021 and claimed an ERC in the amount of $92,309.70 for that quarter.*

**Answer**: The United States admits that the IRS received Plaintiff's Form 941-X for Q3 of 2021 on or about June 30, 2023, and that Plaintiff claimed an ERC in the amount of $92,309.70 for that quarter. The United States lacks sufficient knowledge or information to form a belief about the truth about the rest of the allegations of Paragraph 39.

40. *The IRS has failed to process the Plaintiff's valid ERC claim, and, as a result, has not provided the statutorily required refund to Plaintiff.*

**Answer**: The United States admits that the IRS has not processed Plaintiff's ERC claim but lacks the sufficient knowledge to admit or deny the rest of the allegations of Paragraph 40.

41. *Under I.R.C. § 6611, the United States owes interest on the refund due to Plaintiff "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Plaintiff overpaid its taxes for at least 2021 and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Plaintiff.*

**Answer**: The United States denies that the IRS has "unilaterally refused" to honor any credit to which Plaintiff may or may not be entitled and lacks sufficient information to admit or deny the remaining allegations of Paragraph 41.

42. *Pursuant to I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. Under I.R.C. § 6532, no suit pursuant to I.R.C. § 7422 shall begin prior to the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.*

**Answer**: The United States admits that Plaintiff has quoted federal statutes in Paragraph 42 but denies that Plaintiff's summary is a complete and accurate statement of the relevant law.

**Count II: Attorneys' Fees and Costs**

43. *Plaintiff incorporates and realleges paragraphs 1 through 42 above.*

**Answer**: The United States admits that Plaintiff incorporates by reference the allegations but denies the substance Paragraphs 1 to 42 as alleged in Paragraph 43. The United States also incorporates by reference its Answers to Paragraphs 1 to 42.

44. *Under I.R.C. § 7430(c)(4)(B), the United States must pay litigation and administrative costs because its position is not "substantially justified." The IRS created a self-imposed moratorium on processing ERC claims, and, as a result, has refused to process straightforward claims like those belonging to Plaintiff.*

**Answer**: The United States denies Paragraph 44.

**Prayer for Relief**

45. *Plaintiff prays for the following relief:*
    a. *A tax refund in the amount of $92,309.70 for the Employee Retention Credit for the following taxable periods: the third quarter in 2021.*
    b. *Reasonable attorneys' fees and costs, as allowed by law;*
    c. *Pre-judgment and post-judgment interest, as allowed by law; and*
    d. *Such further relief as the Court may deem just and proper.*

**Answer**: The remainder of the Complaint is a prayer for relief that does not require a response. To the extent Paragraphs 45.a through 45.d require a response, the United States admits that Plaintiff is seeking certain relief but denies it is entitled to any attorneys' fees and lacks sufficient information to admit or deny that Plaintiff is entitled to any of the relief requested.

## II.  DEFENSES

1. Plaintiff must prove it is statutorily entitled to an ERC credit for the third quarter of 2021.

2. In this tax refund suit, the Court can redetermine Plaintiff's entire employment tax liability and offset any possible refund amount by any amount otherwise underreported. *See Lewis v. Reynolds*, 284 U.S. 281, 283 (1932).

3. To the extent Plaintiff establishes in this suit it is entitled to any portion of the ERC claimed, under the doctrine of equitable recoupment, Plaintiff would not be entitled to deduct for purposes of income tax for the relevant tax year(s) the amount of wages paid to employees equal to such ERC. The United States requests an offset against any recovery by Plaintiff for the amount of income tax attributable to any such adjustment.

## III.  PRAYER FOR RELIEF

For these reasons, the United States asks the Court to:

A. Enter judgment that Plaintiff is not entitled to any refund; and

B. Provide other relief the Court deems just and proper, including any offsets or costs.

        DAVID A. HUBBERT
        Deputy Assistant Attorney General

        */s/   Christian A. Orozco*
        Michelle C. Johns
        Texas State Bar No. 24010135
        Christian A. Orozco
        Texas State Bar No. 24107886
        Trial Attorney – Tax Division
        U.S. DEPARTMENT OF JUSTICE
        1700 Pacific Avenue, Suite 3700
        Dallas, Texas 75201
        Phone: 214-880-9762 (Johns)
        Phone: 214-880-9757 (Orozco)
        Fax: 214-880-9741
        Michelle.C.Johns@usdoj.gov
        Christian.A.Orozco@usdoj.gov

        Attorneys for the United States of America

<u>Certificate of Service</u>

  The undersigned hereby certifies that a true and correct copy of the foregoing has been served upon all counsel of record by way of electronic filing on December 20, 2024.

              <u>/s/   *Christian A. Orozco*</u>
              Christian A. Orozco
              Trial Attorney, Tax Division